IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NELSON L. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-cv-575-MHT-TFM |
| | ) | |
| NICHOLAS COGNASI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 2, filed August 15, 2013).  Pending before the Court is Defendants' *Motion to Dismiss or in the Alternative Motion for More Definitive Statement* (Doc. 3, filed August 19, 2013).  The Court has carefully reviewed the Motion to Dismiss, the briefs filed in support of and in opposition to the Motion (Docs. 3, 10, 19, and 22) and the supporting and opposing evidentiary materials.   For good cause, it is the RECOMMENDATION of the Magistrate Judge that the Defendants' Motion be GRANTED in part, and DENIED in part.

### I. JURISDICTION

The district court has subject matter jurisdiction over the claims in this 42 U.S.C. § 1983 (Civil Rights Act of 1871, as amended) action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The parties do not contest personal jurisdiction or venue, and there

are adequate allegations to support both.  Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 2, filed August 15, 2013).

## II. STANDARD OF REVIEW

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts"

standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

More recently, in *Iqbal*, the Supreme Court reiterated that although FED. R. CIV. P. 8 does not require detailed factual allegations; it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss.  *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III. BACKGROUND

The Court accepts as true all relevant facts set forth by the Plaintiff in his Complaint (Doc. 1). As best as this Court can discern, this 42 U.S.C. § 1983 action arises out of two main incidents that led to Plaintiff's arrest, as well as a series of other minor contacts with law enforcement officers.  While leaving Office Depot in his vehicle on or about September

15, 2011, Nelson L. Thomas ("Thomas" or "Plaintiff") noticed Officer Nicholas Cognasi ("Officer Cognasi") waiting for him across the street. *See* Doc. 10-2 at 21. Thomas realized he did not have on his seatbelt as he turned onto the street; so he pulled over, came to a full stop, and buckled his seatbelt. *Id.* After waiting for traffic to clear, Thomas merged into the center lane of traffic, allowed two cars to pass him, merged into his desired lane, and began driving home. *Id.* Officer Cognasi immediately pulled Thomas over. *Id.* Thomas believes Officer Cognasi has frequently followed him out of the Office Depot parking lot, but this is the first time he was stopped. *Id.* Due to this suspicion, Thomas called his sister and set the phone down on the seat while she remained on the line. *Id.*

Officer Cognasi stated that he pulled Thomas over because he almost caused an accident during his traffic maneuvers. *See* Docs. 10-1 at 1, 10-2 at 21. When Officer Cognasi told Thomas to step out of the vehicle, Thomas asked him for the reason. *See* Doc 10-1 at 1. Officer Cognasi responded that Thomas had an outstanding warrant. *Id.* Thomas replied that there were no outstanding warrants against him and that he does not get into trouble anymore. *Id.* Officer Cognasi placed Thomas under arrest without incident. *See* Doc. 10-2 at 26-27. Thomas claims that at that time, the National Crime Information Center ("NCIC") database did not show an outstanding warrant against him. *See* Doc. 10-1 at 1.

Next, on or about September 15, 2012, Thomas was washing his clothes at the laundromat located at 1170 Ann St. in Montgomery, Alabama, when a friend approached him to request a mixed CD that Thomas had previously promised to make for her. *See* Doc. 1-1

at1.  Thomas went outside to retrieve the CD from the back of his vehicle, at which point Officer Quinn[1] walked up and requested the CD from the unidentified woman.  *Id.*  Thomas tried to close his vehicle's hatch back when Officer Quinn grabbed him around his neck from behind.  *Id.*  Thomas requested to be released due to a serious back injury, but instead Officer Quinn slammed him to the ground on his back.  *Id.*  Once Thomas was on the ground, Officer Quinn and his unidentified partner choked and assaulted Thomas.  *See* Docs. 1-1 at 1, 10-1 at 2.  The officers picked Thomas up off the ground and led him toward their squad car.  At this time Thomas requested that they not place him in the back seat of the police car because it was too hot in the car and he has asthma .  *See* Doc. 1-1 at 1.  Thomas also reiterated that he has a serious back injury and the seat in that car could exacerbate the injury.  *Id.*  As a result of being placed in the back of the squad car, Thomas suffered an asthma attack, and an ambulance was called to render aid.  *Id.*  Thomas alleges that the officers then searched his vehicle without his permission in violation of his Fourth Amendment rights.  *Id.*  Thomas avers that he was arrested on false charges of disorderly conduct and failure to obey a police officer.  *See* Docs. 1-1 at 12, 10-2 at 20.

Thomas also claims that Officer Quinn has shown a pattern of harassment that has left him in fear for his life.  *See* Doc. 1-1 at 1.  As examples, on December 12, 2012, Officer Quinn appeared at Thomas' work and questioned not only the owner of the barbershop, but he also questioned employees at several surrounding businesses.  *See* Doc. 10-1 at 2.  This

---

[1] Neither party identifies Officer Quinn's full name.

was not the first time Officer Quinn showed up at Thomas' job to ask questions about him, and his employer subsequently terminated his employment on this basis.  Thomas also alleges that Officer Quinn patrols around his place of residence about three times a week.  *See* Doc. 1-1 at 2.

## IV. Discussion and Analysis

The City of Montgomery, Officer Cognasi, and Officer Quinn (collectively "Defendants") argue that the case is due to be dismissed because the "Complaint is so 'vague or ambiguous' in its current form that these defendants cannot 'reasonably prepare a response.'" *See* Doc. 22 at 1.  Additionally, Defendants argue that Officers Cognasi and Quinn are entitled to qualified immunity, and the City of Montgomery should be dismissed because there are no specific allegations against it, nor is there an official government policy that subjected Thomas to a deprivation of Constitutional rights.  *See* Doc. 22 at 2-7.

## A.   Official Capacity Claims

The complaint in this case is not a model of clarity, and does not clearly state whether Officers Cognasi and Quinn are being sued in their individual capacity, their official capacity, or both.  "When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (citing *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 3106, 87 L. Ed. 2d 114 (1985); *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir.1993)).  Upon review of Thomas' complaint, it is

clear to this Court that Thomas brings suit against the officers in both their official and individual capacities.

In addition, Thomas names the City of Montgomery as a party to this suit. The Eleventh Circuit Court of Appeals has explained why it is unnecessary to name both an officer in his official capacity and the municipality where he is employed:

> Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials.

*Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal punctuation omitted). Moreover, "[u]nder the Eleventh Amendment, state officials sued for money damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir.1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

However, Thomas has sued for injunctive relief, as well as monetary damages against the officers in their official capacity. The official capacity claims against the officers are due to proceed inasmuch as Thomas requests injunctive relief; however, Thomas is barred from requesting monetary damages against the officers in their official capacity. Eleventh Amendment immunity does not "insulate state officials acting in their official capacities from suit in federal court, at least to the extent that the complainant seeks prospective injunctive relief" based on the Constitution. *Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995). Thomas requests the that this Court grant him restraining orders against the officers due to

his allegations of harassment stemming from Officer Cognasi following behind him when he is out shopping and paying bills, and Officer Quinn regularly patrolling his place of residence as well as getting him fired from his job, which collectively has left him in fear for his life.  Consequently, to the extent Officers Cognasi and Quinn move to dismiss the claims of monetary damages against them in their official capacity, the motion to dismiss is due to be GRANTED.  The Court, however, concludes that the defendants' request to dismiss the claims for injunctive and declaratory relief in their official capacity on the basis of qualified immunity are due to be denied at this stage of the proceeding.

## B.    Officer Cognasi in his Individual Capacity

Officer Cognasi invokes the doctrine of qualified immunity in seeking dismissal of the individual capacity claims brought against him.  The qualified immunity doctrine protects officials from the chilling effect that the fear of personal liability would create in carrying out their discretionary duties.  *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  It immunizes "from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

Since qualified immunity is an affirmative defense, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Lee*, 284 F.3d at 1194.  "To determine whether an official was engaged in a discretionary function," federal courts look to see whether the disputed acts

"fell within the employee's job responsibilities." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal citation omitted). This inquiry does not ask "whether the act complained of was done for an improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Plotkin v. United States*, 465 Fed.Appx. 828, 831-32 (11th Cir. 2012) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). The allegations here show that Officer Cognasi acted in his law enforcement capacity when he pulled over Thomas' vehicle for a traffic violation, asked for identification, ran his information through dispatch, and arrested him. Thus, since these are all law enforcement activities, there are sufficient allegations that he acted in a discretionary function.

Once the defendant seeking qualified immunity shows that he acted in a discretionary capacity, the plaintiff must allege that qualified immunity should not apply. *Lee*, 284 F.3d at 1194. Here, Thomas must allege that Officer Cognasi violated one of his constitutional rights, and that the claimed right was clearly established when the challenged conduct occurred. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). In other words, Thomas' complaint must allege that when Officer Cognasi acted, "the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

  i.    *Unlawful Traffic Stop*

Thomas alleges that Officer Cognasi performed an unlawful traffic stop, and

subsequently performed an illegal search of his vehicle, and arrested him on an alleged warrant that Thomas claims did not exist in the NCIC database at the time of his arrest, thus equating to a false arrest.  Thomas alleges that Officer Cognasi regularly followed him while shopping in the area, including following him inside of Boost Mobile as he attempted to pay his bill and directed racial slurs toward Thomas.  Officer Cognasi, however, would not stop Thomas when he had his sister or a friend in the car with him, and waited until the date in question when Thomas was driving alone.  Thomas argues that he did not commit a traffic violation or nearly cause an accident as alleged, but rather after pulling off of the road to buckle his seatbelt, he proceeded to merge into traffic and cross the intersection in accordance with the law.

Defendants have not specifically argued that probable cause or reasonable suspicion existed for Officer Cognasi to stop Thomas for a traffic violation.  Rather, Defendants seek protection from suit under the qualified immunity doctrine, and argue that Officer Cognasi's actions stem from him exercising his judgment in the enforcement of criminal laws.  *See* Doc. 22 at 4-7.  However, the principal focus of the probable cause/reasonable suspicion/exercise of judgment inquiry turns on the information known to Officer Cognasi at the time of the stop.  The facts surrounding the information known to Officer Cognasi through his observations and the inferences and deductions to be drawn from those facts, therefore, are not contained in the complaint.  The Court does not know what facts, if any, Officer Cognasi possessed at the time he initiated the traffic stop, and the Court will not

speculate as to any alleged facts known to Officer Cognasi.   No proper purpose would be served by penalizing Thomas and dismissing his claim prior to discovery because he failed to plead facts of which he is unaware. [2]

    *ii.*    *False Arrest and Illegal Search of Vehicle*

Thomas also alleges Fourth Amendment false arrest and illegal search of his vehicle claims against Officer Cognasi.  The viability of Officer Cognasi's substantive argument seeking dismissal of these claims hinge on the existence of a legal traffic stop.[3]  Having found that Thomas has sufficiently alleged an unlawful traffic stop, the court also finds that the § 1983 false arrest and illegal search claims survive the instant motion to dismiss.

---

[2] *See Velez v. Levy*, 401 F.3d 75, 101 (2d Cir.2005) (while defendant is not entitled to qualified immunity on motion to dismiss, the "factual basis for qualified immunity may arise as the proceedings develop"); *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793–94 (2d Cir.2002) (ruling on qualified immunity defense premature because "[t]he qualified immunity issue ... turns on factual questions that cannot be resolved at this stage of the proceedings;" for instance, "[t]he objective reasonableness of [the defendants'] acts depends in part on what information they had at the time"); *Day v. Morgenthau*, 909 F.2d 75, 78 (2nd Cir.1990) (denying qualified immunity on motion to dismiss Fourth Amendment false arrest and unreasonable search claims "because the complaint does not identify what facts were known to [defendants] at the time of the arrest and search"); *Bame v. Clark*, 466 F. Supp.2d 105, 110 (D.D.C.2006) (denying qualified immunity on motion to dismiss "[g]iven that the constitutionality of the strip searches depends, inter alia, upon what facts were known to and considered by the officers who conducted the searches"); *Holmes v. Artuz*, 95 Civ. 2309, 1995 WL 634995, *2 (S.D.N.Y. Oct.27, 1995) (denying qualified immunity defense on a Rule 12(b)(6) motion due to sparse factual record before the court).

[3] Thomas submitted a copy of Warrant # 2010MO2266 related to a Theft of Services, Third Degree that occurred on May 15, 2010.  *See* Doc. 19 at 2.  Officer Cognasi's arrest report references the cause of arrest pursuant to that warrant.  *See* Doc. 10-2 at 26.

**C.**     **Officer Quinn in his Individual Capacity**

Similarly, Officer Quinn also invokes the doctrine of qualified immunity in seeking dismissal of the individual capacity claims brought against him.  Thomas alleges that Officer Quinn used excessive force against him, performed an unlawful search of his vehicle, and committed a false arrest.  Again, as more fully outlined above, because qualified immunity is an affirmative defense, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194.

   *i.* *Excessive Force*

Here, accepting all of the facts alleged in the Complaint as true (as the Court must on Rule 12(b)(6) review), Thomas was washing his clothes at a laundromat when a friend approached him and requested a mix CD from him.  Thomas went outside to retrieve the CD out of the back of his car.  Upon handing the CD to his friend, Officer Quinn and his unnamed partner approached and demanded the CD from Thomas' friend.  Thomas attempted to close his vehicle's hatchback when Officer Quinn grabbed him around his neck from behind and began choking him.  Thomas pled with Officer Quinn to release him because he has a serious back injury; however, Officer Quinn slammed him to the ground on his back.  Officer Quinn and his partner picked up Thomas from ground and led him toward the squad car.  Thomas again pleaded with them that he has a serious back injury and that the seat could exacerbate it.  Additionally, Thomas told the officers it is hot outside and in the

vehicle and he has asthma, but his pleas were ignored.  Thomas was placed in the back of the squad car, and subsequently suffered from an asthma attack, and an ambulance was called to treat him.

Thomas alleges that Officer Quinn used excessive force by suddenly attacking and then arresting him.  In excessive force cases, courts deploy an objective test that gauges the reasonableness of the officer's actions given the totality of the circumstances.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  Relevant factors include: "the severity of the crime, whether the suspect poses a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Saucier v. Katz*, 533 U.S. 194, 195, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).  In judging the reasonableness of an officer's actions, courts have to avoid any hindsight bias by looking through the eyes of the officer on the scene at the time the incident occurred.  *Garrett v. Athens–Clarke Cnty.*, 378 F.3d 1274, 1281 (11th Cir. 2004); *see also Graham*, 490 U.S. at 396, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.").  Indeed, courts will not second-guess reasonable decisions made by an officer.  *Carr v. Tatangelo*, 338 F.3d 1259, 1270 (11th Cir. 2003).  Nor are government officials required to err on the side of caution in carrying out their discretionary functions. *Marsh v. Cnty. of Butler*, 268 F.3d 1014, 1030 n. 8 (11th Cir. 2001) (en banc).

At this juncture, all three *Graham/Saucier* factors weigh in favor of denying Officer

Quinn's qualified immunity defense.  First, the complaint does not suggest that Thomas committed a crime—let alone a severe one—before Officer Quinn and his partner approached him and began beating him.  In *Lee v. Ferraro*, the Eleventh Circuit partly rested its decision denying qualified immunity on how the defendant arrested the plaintiff for honking her horn on a busy thoroughfare.  284 F.3d 1188, 1198 (11th Cir. 2002).  Although the plaintiff's actions in *Lee* gave the defendant probable cause to make an arrest, the court of appeals found it "difficult to imagine a less significant crime," thus mitigating against the reasonableness of the defendant's later use of force.  *Id.*  This case does not even reach the level of *Lee*, because nothing in the complaint suggests that Thomas committed a crime before Officer Quinn and his partner approached him.

Second, nothing in the complaint suggests that Thomas posed a threat to the officers.  According to Thomas' pleading, Officer Quinn and his partner just approached and began harassing Thomas and his friend in the laundromat parking lot and then escalated it into the Officer Quinn choking Thomas and slamming him on the ground.  Thomas contends that the officers just walked up and started the altercation because he was dating the ex-wife of one of Officer Quinn's friends.  In *Lee*, the plaintiff likewise alleged that she posed no threat to the officers before they initiated force against her.  284 F.3d at 1198.  Similarly, in *Vinyard v. Wilson*, the court of appeals held that the plaintiff did not pose a threat to the defendant even though "she was screaming and using foul language in the patrol car," because this conduct "was a nuisance but not a threat."  311 F.3d 1340, 1347–48 (11th Cir. 2002).  In

each case, an Eleventh Circuit panel found the district court's denial of qualified immunity proper partly because of the lack of a threat posed by the plaintiff. That is precisely the case here. Hence the second *Graham*/*Saucier* factor weighs in Thomas' favor, too.

Third, and finally, the complaint denies that Thomas ever resisted or attacked the officers beyond verbally pleading with them due to his back injury. Again *Lee* is instructive: there the Court found that, because the plaintiff never resisted or attempted to flee, the officer's decision to lead her to the back of his car and slam her head into the truck amounted to excessive force and a clear violation of her constitutional rights. 284 F.3d at 1198. Here, Thomas' Complaint suggests he never resisted or tried to flee when the officers approached him. Thus, the third *Graham*/*Saucier* factor favors him as well.

Moreover, while an officer has the power to use a reasonable amount of force in making a lawful arrest or investigatory stop, *Graham*, 490 U.S. at 396, 109 S. Ct. 1865 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)), an Alabamian has the reciprocal right to use force in resisting an unlawful arrest. *See, e.g., Sanders v. State*, 181 Ala. 35, 61 So. 336 (1913) ("an attempt unlawfully to arrest gives the person sought to be arrested a right to resist"). Since the officers lacked a reason to arrest Thomas under the facts as alleged, it is arguable that he would have had some leeway to resist once they attacked him and began beating him. So even assuming *arguendo* Thomas resisted in some manner after the attack began, it is plausible under the facts as alleged that his actions were justified.

On this limited Rule 12(b)(6) factual showing, the Court cannot find that the officer's conduct was objectively reasonable in light of the facts known to them.  Accordingly, the Officer Quinn is not entitled to qualified immunity at the Rule 12(b)(6) stage with respect to the excessive force claim. He may still be able to prevail on his qualified immunity defense, however, if at a later stage in the proceedings he shows that Thomas initially made an aggressive move towards him.  *See Smith v. Mattox*, 127 F.3d 1416, 1420 (11th Cir. 1997).  If he does, the Court will revisit the qualified immunity question on Thomas' excessive force claim.

ii.    *False Arrest*

Officer Quinn also invokes the qualified immunity doctrine to shield him from Thomas' Fourth Amendment false arrest claim.  The complaint alleges that Officer Quinn lacked probable cause to arrest Thomas.  Thomas claims that Officer Quinn and his partner drove up to his car while he was giving a mixed CD to a friend, and demanded that his friend hand over the CD.  When Thomas attempted to close his vehicle's hatchback, Officer Quinn grabbed him around the neck from behind, choked him "as if he was trying to kill [him]," slammed him to the ground on his back, and placed him in the back of a hot car causing an asthma attack.

As a general rule, qualified immunity does apply when the officer had probable cause to arrest a suspect for any offense.  *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010).  Taking the facts in Thomas' complaint as true, the pleadings offer no hint as to any

offense Officer Quinn reasonably could have believed that Thomas committed.

The qualified immunity issue turns on a single question: does the complaint suggest Officer Quinn had arguable probable cause to arrest Thomas?  It goes without saying that an arrest without probable cause violates the Fourth Amendment.  *See Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990).  Yet an officer can still avail himself of the qualified immunity doctrine if he had arguable probable cause for the arrest.  *Kingsland*, 382 F.3d at 1232 (citing *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999)).  This requires asking "whether 'reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed ...'"  *Id.* (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).  For example, an officer that lacks probable cause as a result of a reasonable mistake can use the qualified immunity doctrine to inoculate himself against suit.  *See, e.g., Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991); *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993).

The facts as presented in the complaint do not give rise to probable cause to arrest Thomas.  Nor do they show that he had arguable probable cause—for instance, from a reasonable mistake—that would allow him to claim qualified immunity despite violating Thomas' constitutional rights.  Accordingly, Officer Quinn is not entitled to qualified immunity at the Rule 12(b)(6) stage, thus the motion to dismiss is due to be denied at this point.

      *iii.*    *Illegal Search of Vehicle*

Thomas also alleges an illegal search in violation of the Fourth Amendment claim against Officer Quinn. The viability of Officer Quinn's substantive argument seeking dismissal of this claim hinges on the existence of probable cause to arrest Thomas. Having found that Thomas has sufficiently alleged a false arrest claim, the court also finds that the § 1983 illegal search claim survives the instant motion to dismiss.

**D.    City of Montgomery**

Again, the Complaint is not a model of clarity, but from what this Court is able to discern, Thomas has named the City of Montgomery as a defendant because the officers, as agents of the City of Montgomery, triggered liability on the part of the city because of the officers' actions, as well as the city's failure to hold the officers accountable after Thomas filed several complaints. Alabama has partially abrogated municipal immunity, so a municipality can in fact incur liability for the negligent (but not the intentional) acts of its employees. *See* ALA. CODE § 11–47–190 (1975). In other words, the common law rule of vicarious liability applies to Alabama's municipalities. *See Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001). This means that, "for the employer to be liable under th[e] doctrine, the employee must first be liable for a tort," and "[i]f the agent is not liable for any tort, the principal is also absolved." *Id.* (citing *Latham v. Redding*, 628 So. 2d 490, 495 (Ala. 1993)).

These rules sound easy enough to apply. But an Alabama law granting police officers

discretionary function immunity complicates matters: it makes state agents immune from civil liability for conduct performed in "any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6–5–338(a).  As a necessary corollary, the immunity granted to the state agent extends to his principal, the municipality.  ALA. CODE § 6–5–338(b); *Howard v. City of Atmore*, 887 So.2d 201, 211 (Ala. 2003) ("§ 6–5–338 shields the City from liability for the alleged 'neglect, carelessness and unskillfulness' " of its officer).  So Thomas' attempt to hold the City of Montgomery liable turns on a single question: was Officer Cognasi and Officer Quinn exercising a discretionary function during their actions against Thomas?

"Generally, arrests and attempted arrests are classified as discretionary functions." *Telfare v. City of Huntsville*, 841 So.2d 1222, 1228 (Ala. 2002).  Yet Alabama law divests law enforcement officers of discretion to make an arrest without a warrant except under two circumstances.  The first is where the officer has probable cause to believe the arrestee committed a felony.  ALA. R. CRIM. P. 4.1(a)(1)(i).  The second is where the officer has probable cause to believe the arrestee committed any other offense in the officer's presence. ALA. R. CRIM. P. 4.1(a)(1)(ii).

In *Telfare*, the police officer, McCarver, had probable cause to believe that the arrestee, Telfare, had committed various misdemeanors when he arrested him.  But since the crimes did not take place in McCarver's presence, he lacked the discretion necessary to arrest Telfare lawfully.  Consequently, the Alabama Supreme Court held that McCarver had no

right to invoke qualified immunity from Telfare's civil suit for an unlawful arrest under state law. *Telfare*, 841 So.2d at 1228. And because McCarver could not invoke qualified immunity, neither could his municipal employer, the City of Huntsville. *Id.* at 1229.

On this limited Rule 12(b)(6) factual showing, it is plausible that both Officer Cognasi and Officer Quinn lacked probable cause to stop, use force, or arrest Thomas. Like the situation in *Telfare*, there exists a genuine question about whether the officers had authority under Alabama law to take action against Thomas. By the same token, because the municipality's liability for the officers' actions depends on how this question is resolved, there also exists an issue on the municipality's liability. For this reason, Defendants' motion to dismiss is due to be denied at this 12(b)(6) stage as it relates to Thomas' attempt to hold the city responsible for the officers' actions.

## V. Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge as follows:

(1)    To the extent Officers Cognasi and Quinn move to dismiss the damages claims against them in their official capacity, pursuant to Fed. R. Civ. P. 12(b)(6) the Defendant's *Motion to Dismiss or in the Alternative Motion for More Definitive Statement* (Doc. 3) be **GRANTED**.

(2)    With respect to the remaining claims, pursuant to Fed. R. Civ. P. 12(b)(6) the Defendant's *Motion to Dismiss or in the Alternative Motion for More Definitive Statement* (Doc. 3) be **DENIED**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to this Recommendation on or before **March 21, 2014.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 7th day of March, 2014.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE